FARMER, Judge.
The issue presented today is novel to Florida criminal jurisprudence. Defendant argues that a determination by a United States Bankruptcy Judge in his Chapter 13 case is determinative as to the amount of restitution he can be obligated to pay the victim of his criminal conduct, notwithstanding the trial court’s' assessment of a higher amount as part of his criminal sentence. To settle the matter, we must decide whether amendments to the United States Bankruptcy Code in 1990 govern the sentences given in criminal proceedings begun after the amendment for crimes committed before it’s enactment. We affirm the lower court’s decision.
Defendant operated a motor vehicle service station in Pompano Beach. During the period from December 1988 to September 1989 when he claimed to be experiencing financial problems, instead of remitting local option fuel taxes that he had collected to the State of Florida he spent the collected taxes to pay his personal debts. After the State Department of Revenue (DOR) discovered his defalcation, he and DOR entered into discussions about repayment of the missing funds. At some point the parties discussed the filing of criminal charges by the state and defendant filing for relief under the bankruptcy law to pay the stolen funds over a period of time.
Before any criminal charges were filed, in 1991 defendant filed for relief under chapter 13 of the Bankruptcy Code.[1] There was a dispute between him and DOR in the chapter 13 case as to the actual amount of fuel taxes he had stolen. DOR filed a proof of claim in the 1991 chapter 13 case claiming $41,107 in defalcations, an amount apparently representing $21,862 in actual collections stolen, interest accrued to the date of the chapter 13 petition, and accumulated statutory penalties. Defendant objected to DOR’s claim. He contended that the actual figure taken was closer to $10,000. At some point in this 1991 *1383 chapter 13 case, he and DOR stipulated to an agreed order allowing the DOR claim in the amount of $10,000. Although an order confirming his plan was 'entered, when defendant later failed to make any payments the 1991 bankruptcy case was dismissed on April 13,1992.
In November 1993, he was charged with grand theft in the amount of $21,862 for stealing the taxes he had collected. Some seven months later, the criminal case came before the circuit judge. By that time, defendant had refiled his chapter 13 case, seeking to establish a plan for payment of the tax revenues he had stolen. There had been plea negotiations. The sticking point was restitution.
The trial judge made clear that he would require, as a condition of any probation, restitution of the full amount of state revenues converted by the defendant. He also inquired whether any restitution debt might be dischargeable in bankruptcy and made clear that he was not concerned that any amount of any DOR claim allowed by the bankruptcy court would operate to fix the amount of restitution that he would require as part of any sentence.
Defendant advised the court that he would like to settle the amount of DOR’s claim in his chapter 13 case in the bankruptcy court before sentencing. The trial judge made it expressly clear that he would consider the amount allowed in bankruptcy but would not be bound by it. On that basis defendant proceeded with his plea. The judge then accepted the plea and agreed that sentencing could take place after defendant had obtained a final order of confirmation of his new chapter 13 plan.
Once again the matter of the amount due DOR was disputed in the bankruptcy case. Apparently, the bankruptcy court set-tied the objection to the amount asserted by DOR by fixing the allowed claim at $10,000, the figure represented by the agreed order in the previously dismissed 1992 case.[2] On November 1, 1994, the bankruptcy court entered an order confirming defendant’s plan calling for payment of DOR’s claim in the amount of $10,000.
The criminal case then came before the circuit court in November 1994 for sentencing. At sentencing, the court learned that defendant had filed the 1991 chapter 13 case in an agreement with DOR to forestall criminal charges and that, although a plan was confirmed, defendant never made any payments on it, resulting in a dismissal of the ease. Defendant testified at the sentencing hearing that the 1991 plan was the product of bad lawyering, that his lawyer proposed a plan that was “way too high.” His defense lawyer[3] argued, nonetheless, that the circuit court was bound by the bankruptcy court’s confirmed plan in 1994 fixing the restitution amount to be paid DOR at $10,000.
The trial judge declined to accept the 1994 plan as fixing the amount of criminal restitution. He noted several times that defendant had converted the money in 1988-89 and thus had, in effect, an interest free loan of $21,000 from the State of Florida, with no payments having been made on that loan up to the time of sentencing.[4] Accordingly, he fixed the amount of restitution at $21,862, waiving only accrued interest and investigative costs. Defendant preserved his right to appeal the issue.
In Kelly v. Robinson, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), the Supreme Court held that restitution obligations imposed as conditions of probation in state criminal actions are not dischargeable in proceedings under chapter 7 of the Bankruptcy Code.[5] The basis of its decision was its hold *1384 ing that restitution orders fell within the exception to discharge in section 523(a)(7), thus making it unnecessary to determine whether restitution orders constitute “debt[s]” as defined by section 101(11) of the Bankruptcy Code.
Four years later, however, in Pennsylvania Dept, of Pub. Welfare v. Davenport, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), the Court confronted the issue not reached in Kelly, i.e., “whether restitution obligations are dischargeable debts in proceedings under Chapter 13, § 1301 et seq.” 495 U.S. at 555,110 S.Ct. at 2129. In finding such debts to be dischargeable in a chapter 13 case even though they could not be discharged in a chapter 7 case, the Court reasoned:
“Congress secured a broader discharge for debtors under Chapter 13 than Chapter 7 by extending to Chapter 13 proceedings some, but not all, of § 523(a)’s exceptions to discharge.”
Id. at 562,110 S.Ct. at 2132.
Later that same year, Congress amended the Bankruptcy Code to correct the statutory provision construed in Davenport. Specifically, it adopted section 1328(a)(3), which excepts from a chapter 13 discharge “any debt ... for restitution ... included in a sentence on the debtor’s conviction of a crime.” The issue we confront is whether the legislation applies to criminal acts committed before its passage where the bankruptcy case was not begun until after the effective date. We hold that it does.
We begin by summing up the sequence of pertinent events in this case. When defendant stole the funds belonging to the State of Florida, the criminal law of this state imposed restitution on him; but applicable bankruptcy law allowed any restitution debt arising from the theft to be discharged in a chapter 13 plan. Before he was charged with the crime, the bankruptcy law was changed to preclude chapter 13 discharge-ability of a restitution debt. Yet, when he first sought relief under the bankruptcy laws, no criminal charges had yet been filed against him and his inchoate restitution debt was non-dischargeable.
Although not framed this way by the parties, the broader question is really whether a right arising under a civil statute for relief of debtors can become vested as a result of criminal conduct. The 1990 amendment to the Bankruptcy Code became effective November 29, 1990. Pub.L. 101-647, § 3104(a). The amendment provided that:
“(b) Application of amendments. — The amendments made by this Title [amending sections 523 and 1328] shall not apply with respect to cases commenced under title 11 of the United States Code before the date of the enactment of this Act.”
Pub.L. 101-647, § 3104(b). Congress was doubtlessly aware that its legislation could affect criminal prosecutions throughout the country. It might have provided that the amendment would not apply to any crime committed before enactment, but it chose not do so. Instead it tied applicability to the date of filing of cases under the bankruptcy law. We are thus unable to find in this provision any suggestion that Congress intended that the application of the new exception to discharge would depend on the date of the crime.
Moreover, potential exceptions to discharge in a chapter 13 case do not appear to us to create vested rights to a chapter 13 discharge in those who have committed crimes requiring restitution in any supposed reliance on a discharge. While the right to seek relief under bankruptcy law is unquestionably a right arising under the supreme law of our land, no one has made a showing in this case that the right to particular bankruptcy relief from the consequences of criminal acts is vested upon the commission of those crimes. While Congress might have so provided in its bankruptcy laws, clearly it chose not to do so.
One might also contend that the relief afforded by bankruptcy laws is adjectival— that it merely affects the remedy available to the creditor. We do not rest our decision on such a notion, however. Plainly, many of the protections afforded by bankruptcy law have substantive attributes: e.g., the prohibition on “bankruptcy termination” clauses, and the severe restrictions as to the enforceability of reaffirmation agreements. We simply see *1385 the right to discharge restitution debts, however, as being governed by the bankruptcy statutes, and clearly this statute makes the applicability of the new anti-discharge provision in chapter 13 dependent on when the petition for relief under chapter 13 was filed and not the date of the crime.
We also reject defendant’s argument that the stipulated order in the 1991 chapter 13 case operates under the doctrine of collateral estoppel to preclude relitigation in the sentencing proceeding as to the amount of the restitution debt. Of course it is entirely correct to note that, under the currently applicable bankruptcy law, such debts are not discharged in a confirmed and executed chapter 13 plan. Defendant does not explain how an unexecuted plan in a dismissed chapter 13 case would bind a state criminal court as to the amount of the loss actually suffered by the victim of the crime.
Defendant’s collateral estoppel argument is predicated on DOR’s stipulation in the dismissed 1991 ease to the amount of its allowed claim. As the supreme court bluntly noted in Gordon v. Gordon, 59 So.2d 40, 44 (Fla.1952), cert. denied, 344 U.S. 878, 73 S.Ct. 165, 97 L.Ed. 680 (1952), the doctrine of estoppel by judgment, or collateral estoppel, “rests upon equitable principles.” We note, however, that Judge Carney found little equity — much less an estoppel — in defendant’s contention. He expressly noted that to do so would leave DOR with no consideration in the bargain. DOR forbore from filing criminal charges in order to allow defendant to make restitution of the stolen funds in a chapter 13 proceeding, but then defendant failed to make any payment at all under the plan confirmed in the 1991 case. Under defendant’s contention, DOR would be somehow bound by that agreement, even though he failed to perform his part of the forbearance bargain.
While an agreed order on allowance of the DOR claim might tie the hands of the bankruptcy judge in the refiled bankruptcy case, we think that it would be manifestly inequitable to allow that unperformed agreement to bind the sentencing judge in the criminal case. To do so would have all the features of allowing defendant’s status as an orphan to absolve him from the consequences of creating that status by the very act of killing his parents.
AFFIRMED.
PARIENTE and STEVENSON, JJ., concur.

. See 11 U.S.C. § 1301 et seq. Chapter 13 of the United States Bankruptcy Code affords relief to wage earners with regular income, allowing them to file a plan of repayment which is then subject to confirmation by the bankruptcy court. If there is a dispute as to the total amount owed by a debtor to a particular creditor, after notice and hearing the bankruptcy judge determines the amount of the claim to be allowed. If the plan is confirmed, the debtor makes the payments to a trustee, who in turn pays the creditors. If the debtor fully performs the confirmed plan, the debtor is discharged from any obligations covered by the plan.

. When a chapter 13 case is dismissed, if it is later refiled some orders entered before the dismissal are binding in the refiled case. See 11 U.S.C. § 349.

. We note that his criminal defense lawyer was not his bankruptcy lawyer.

. He dryly noted that defendant could hardly expect such generous terms — no interest, no payments for 9 years, then monthly payments on less than half the principal only for 4 years — from any bank or other lender. He wondered why the State of Florida should be tied to such benevolence as part of its criminal restitution statutes.

.See 11 U.S.C. § 701 et seq.